IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ENTERED

AUG - 9 2004

U.S. DISTRICT COURT
WHEELING, WV 26003

THOMAS JOSEPH COYNE, Ph.D.,

      Plaintiff,

v.                                                    Civil Action No. 5:04CV74
                                                      (STAMP)

JOSEPH MANCHIN, III,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR EXPEDITED PRELIMINARY INJUNCTION

### I.  Procedural History

On July 6, 2004, <u>pro se</u> plaintiff, Thomas Joseph Coyne, Ph.D., filed a motion for expedited preliminary injunction which was attached to his complaint.  Plaintiff requests that this Court declare W. Va. Code § 3-5-23 unconstitutional and seeks to have his name appear on the ballot for the office of Governor of the State of West Virginia in the 2004 general election to be held on November 2, 2004.

On July 27, 2004, defendant, Joseph Manchin, III, Secretary of the State of West Virginia, filed an answer to plaintiff's motion for expedited preliminary injunction.  On July 28, 2004, this Court conducted a hearing on plaintiff's motion for a preliminary injunction.[1]  On the same date, plaintiff filed a supplemental

---

[1] This Court scheduled this hearing immediately after defendant was served with the complaint and motion and it appeared to the Court that it had <u>in personam</u> jurisdiction over the defendant.

*10*

memorandum in support of his motion for preliminary injunction which essentially contained the arguments that he made at the preliminary injunction hearing. On July 30, 2004, defendant filed an amended answer.

This Court has carefully reviewed the motion for expedited preliminary injunction and because plaintiff is <u>pro se</u>, this Court has liberally construed plaintiff's motion and supplemental memorandum. <u>See Haines v. Kerner</u>, 404 U.S. 519 (1971)(holding <u>pro se</u> complaint to less stringent standards than formal pleadings drafted by lawyers).

After consideration of the briefs submitted by the parties, the applicable law and the arguments made by the parties at the hearing on the preliminary injunction, plaintiff's motion for an expedited preliminary injunction is denied.

## II.  Facts

In a letter dated May 27, 2004, plaintiff requested from the defendant the "appropriate form for one interested in running for the office of Governor here in West Virginia." Def.'s Answer, Ex. 1. Subsequently, in a letter dated June 11, 2004, the Office of the Secretary of State responded to plaintiff's letter stating that the "candidate filing deadline was on January 31, 2004 at midnight." Def.'s Answer, Ex. 4. Attached to the June 11, 2004 letter were write-in candidate forms and a brochure entitled "Candidates and Voters Guide To WRITE IN Filing and Voting

Procedures." Thereafter, on June 16, 2004, plaintiff wrote to the defendant objecting to the information contained in the June 11, 2004 letter. The Secretary of State's Office then responded to plaintiff's letter in which they provided sufficient forms and other filing deadline information, including write-in filing information.

III.  <u>Applicable Law</u>

In <u>Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.</u>, 550 F.2d 189 (4th Cir. 1977), <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 926 F.2d 353 (4th Cir. 1991) and <u>Direx Israel, Ltd. v. Breakthrough Medical Corp.</u>, 952 F.2d 802 (4th Cir. 1991), the Fourth Circuit set forth the equitable factors that a district court must consider when determining whether a temporary restraining order or preliminary injunction should issue. <u>See also</u> <u>C/R TV Cable, Inc. v. Shannondale, Inc.</u>, 792 F. Supp. 1018, 1021-22 (N.D. W. Va. 1992). The four factors which must be considered in granting a preliminary injunction in the Fourth Circuit are:

> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest.

<u>Direx Israel</u>, 952 F.2d at 812 (citing <u>Rum Creek</u>, 926 F.2d at 859). Additionally, the "plaintiff bears the burden of establishing that each of these factors supports granting the injunction."  <u>Id.</u>

3

(quoting <u>Technical Publishing Co. v. Lebhar-Friedman, Inc.</u>, 729 F.2d 1136, 1139 (7th Cir. 1984)).

The <u>Direx Israel</u> court emphasized that "[t]he 'likelihood of irreparable harm to the plaintiff' is the first factor to be considered in this connection." 952 F.2d at 812.  If the plaintiff makes "a 'clear showing' of irreparable injury absent preliminary injunctive relief," a district court must then balance the likelihood of irreparable harm to the plaintiff without an injunction against the likelihood of harm to the defendant with an injunction.  <u>Id.</u>; <u>see also</u> <u>Blackwelder</u>, 550 F.2d at 195.  Then, if a decided imbalance of hardship appears in the plaintiff's favor, the plaintiff need not show a likelihood of success; plaintiff need only show that grave or serious questions are presented by plaintiff's claim.  <u>Blackwelder</u>, 550 F.2d at 195-96; <u>see also</u> <u>James A. Merritt & Sons v. Marsh</u>, 791 F.2d 328, 330 (4th Cir. 1986) ("when the balance of harm decidedly favors the plaintiff, he is not required to make a strong showing of a likelihood of success . . . ."). The district court should also consider the public interest.  <u>See</u> <u>Blackwelder</u>, 550 F.2d at 196.  However, as the <u>Blackwelder</u> court concluded "[t]he two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with the decree."  <u>Id.</u>

The issuance of a preliminary injunction is committed to the sound discretion of the district court.  <u>Conservation Council of</u>

<u>North Carolina v. Costanzo</u>, 505 F.2d 498, 502 (4th Cir. 1974).  If a preliminary injunction is granted, the order granting the same must "set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts to be restrained."  <u>See</u> Fed. R. Civ. P. 65(d); <u>see also</u> Fed. R. Civ. P. 52(a) ("in granting or refusing interlocutory injunctions the court shall [ ] set forth the findings of fact and conclusions of law which constitute the grounds of its action").  However, the grant of preliminary injunctive relief is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it."  <u>Direx Israel</u>, 952 F.2d at 811 (quoting <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 800 (3d Cir. 1989)).

Moreover, the Fourth Circuit Court of Appeals has distinguished requests for preliminary injunctive relief that "preserve[s] the status quo until the rights of the parties can be fairly and fully investigated and determined by strictly legal proofs according to the principles of equity" from requests for mandatory preliminary injunction that do not preserve the status quo.  <u>See Wetzel v. Edwards</u>, 635 F.2d 283, 286 (4th Cir. 1980), quoting <u>Meiselman v. Paramount Film Distributing Corp.</u>, 180 F.2d 94, 97 (4th Cir. 1950).  Mandatory preliminary injunctions "should

be granted only in those circumstances when the exigencies of the situation demand such relief." Id.

### IV.    Discussion

#### A.    Irreparable Harm to Plaintiff Absent an Injunction

In order for plaintiff to prevail on his motion for preliminary injunction, plaintiff must first establish that he is likely to suffer irreparable harm if injunctive relief is not granted. See Direx Israel, 952 F.2d at 812. Moreover, "a cogent showing of irreparable harm is an indispensable condition of such intervention." See Sears, Roebuck & Co., 473 F.2d at 93. The required "irreparable harm" must be "neither remote nor speculative, but actual and imminent." Direx Israel, 952 F.2d at 812 (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)).

Defendant argues that plaintiff has an alternative remedy at law because plaintiff can still seek the office as a write-in candidate or run in the next election for governor.  This Court finds defendant's argument on those points to be without merit.

In this case, plaintiff has been denied access to the ballot because he did not timely file the forms for candidacy as required by W. Va. Code § 3-5-23.[2]  Without an injunction, the election for

---

[2] As of the date of this order, plaintiff has not presented any evidence that he even attempted to file his declaration for candidacy or his nomination petition form with or without the required signatures.  Plaintiff did not dispute at the hearing that he received defendant's letter dated June 23, 2004 in which

governor will take place and notwithstanding possible write-in votes for his election, the plaintiff will not be considered on the ballot by the voters for the office of governor.  Moreover, monetary damages, which are not being sought, would not compensate plaintiff.  Thus, plaintiff will be irreparably harmed absent an injunction.  See Simpson v. City of Hampton, Virginia, 919 F. Supp. 212 (E.D. Va. 1996)(finding irreparable injury to plaintiff seeking to modify at-large system of election, but denying injunction).

B.   Irreparable Harm to Defendant Absent an Injunction

However, in this case, enjoining the enforcement of W. Va. Code § 3-5-23 is likely to irreparably harm the State by impairing its ability to screen out candidates who have not timely complied with the state's election laws.  The Supreme Court has recognized that "[t]he State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates."  Anderson v. Celebrezze, 460 U.S. 780, 788 n.9 (1971); see also Libertarian Party of Virginia v. Davis, 766 F.2d 865, 868 (4th Cir. 1985).  On balance, this Court finds that the harm an injunction would cause the defendant is at least equal to that of the plaintiff if the injunction is denied.

---

defendant attached a copy of the nomination petition form.

C.   Likelihood of Success on the Merits

The Supreme Court in Anderson v. Celebrezze, 460 U.S. 780 (1971), articulated a balancing test to determine the constitutional validity of the various state schemes:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justification for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional. The results of this evaluation will not be automatic; as we have recognized, there is "no substitute for the hard judgments that must be made."

Id. at 789-90 (citations omitted).   The Anderson court also recognized that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos is to accompany the democratic process." Id. at 788 (quoting Storer v. Brown, 415 U.S. 724, 730 (1974)).

Plaintiff contends that W. Va. Code § 3-5-23 is unduly burdensome for several reasons.[3] First, plaintiff contends that he should not be required to file anything eleven months in advance of the election.   Further, plaintiff argues that independent

---

[3] However, plaintiff admitted at the preliminary injunction hearing that he had not even read W. Va. Code § 3-5-23.

8

candidates are given disparate treatment in comparison to major party candidates.[4]

West Virginia Code § 3-5-23 provides that candidates with no party organization "shall file a declaration . . . ; such declaration is to be filed at least thirty days prior to the time of filing the certificate provided by section twenty-four [§ 3-5-24] of this article." West Virginia Code § 3-5-24 provides that the filing of certificates nominating candidates for office "shall be filed . . . not later than the day preceding the date on which the primary election is held."

The 2004 primary election date in West Virginia was on May 11, 2004. Thus, the deadline for the filing of certificates nominating candidates for office was on May 10, 2004, and the declaration for candidates with no party organization is on April 12, 2004.[5] This Court does not believe that the deadlines for filing these forms are unreasonable. See also Jenness v. Fortson, 403 U.S. 431, 422 (1971)(recognizing that the State has a legitimate interest in regulating the number of candidates on the ballot).

_____

[4] At the preliminary injunction hearing, plaintiff argued that the Democratic and Republican parties negotiated deals between themselves regarding who will get what office within the State. See also Pl.'s Supplemental Mem. Supp. Mot. for Prelim. Inj. at 2.

[5] Thirty days prior to May 10, 2004 was on April 10, 2004, a Saturday.

Notably, plaintiff did not request any forms for the office of Governor until May 27, 2004.[6]  Further, nothing in W. Va. Code § 3-5-23 precludes plaintiff from obtaining signatures for his nomination petition prior to December 31, 2003, the date when the form was revised.  In addition, this Court notes that independent candidates are afforded a later filing deadline to declare their candidacies than major party candidates.  West Virginia Code § 3-5-6 provides major party candidates must file their certificates of announcement "not earlier than the second Monday in January next preceding the primary election day, and not later than the last Saturday in January next preceding the primary election day . . . ."

Second, plaintiff contends that the filing fee that is required under W. Va. Code § 3-5-23 is unreasonable.  West Virginia Code § 3-5-23 provides that "[a]t the time of filing of such declaration each candidate shall pay the filing fee required by law . . . ."  Pursuant to W. Va. Code § 3-5-8(a), the filing fee for

---

[6] In response to this letter the Secretary of State's office mailed to plaintiff a letter which stated that the "candidate filing deadline was on January 31, 2004 at midnight."  Defense counsel conceded at the preliminary injunction hearing that plaintiff was not given the correct date for candidate filing because the person responding to plaintiff's letter gave him the January 31, 2004 date thinking that plaintiff was a candidate for one of the major parties.  Nevertheless, this Court finds that this mistake did not unfairly prejudice plaintiff because plaintiff did not request forms for the office of governor as an independent candidate until May 27, 2004, well past the April 12 deadline established by statute.

the office of governor is "one percent of the annual salary of the office."  In addition, W. Va. Code § 3-5-8a allows candidates who are unable to pay the filing fee to qualify through a petition process.

In <u>Lubin v. Parish</u>, 415 U.S. 709, 715 (1974), and <u>Bullock v. Carter</u>, 405 U.S. 134, 144-45 (1972), the United States Supreme Court recognized that the requirement of a filing fee for placement on the ballot fulfills the legitimate state interest of deterring frivolous candidates and that there was a countervailing interest to provide ballot access.  In weighing these interests, the <u>Lubin</u> and <u>Bullock</u> courts held that a state could not condition ballot access solely upon the payment of filing fee.  <u>Lubin</u>, 415 U.S. 709, 718; <u>Bullock</u>, 405 U.S. 134, 149.

In light of these Supreme Court decisions and W. Va. Code § 3-5-8a, which allows ballot access to candidates who are unable to pay the filing fee, this Court finds that plaintiff will not likely succeed on this argument.

Third, plaintiff argues that the credentials requirement that must be filed before the circulation petition is filed is unreasonable.[7]  This Court finds that plaintiff will not likely

---

[7] In <u>McClure v. Manchin</u>, 301 F. Supp. 2d 563 (N.D. W. Va. 2003), the court enjoined the Secretary of State, his officers, agents, servants, and employees from enforcing the following:

(a) The requirements of personal identification on credentials, W. Va. Code § 3-5-23(b);

succeed on this argument because he has failed to demonstrate how the credentials requirement is harmful to him. See also McClure v. Manchin, 301 F. Supp. 2d 564, 570 (N.D. W. Va. 2003)(finding that "plaintiffs fail to demonstrate how the credentials requirement is intrinsically harmful apart from the explicitly identified burdens of section 3-5-23(b)"). Further, as the court pointed out in McClure, "credentials serve the State's interest in preserving the integrity of signature solicitation." Id. at 573.

Fourth, plaintiff argues that the requirement of a street or rural route and box number address as a precondition for those signing the nomination petitions is unreasonable. However, plaintiff has not articulated how this requirement is unreasonable, and this Court finds plaintiff's unsupported argument without merit.

Fifth, plaintiff argues that it is unreasonable that people who sign the petition must be registered to vote. This Court finds that this requirement is not unreasonable. See Jenness, 403 U.S.

_____

(b) Any construed requirement under that statute of obtaining credentials in person at the clerk's office; and

(c) The notice provisions of section 3-5-23(c).

Id. at 576. The McClure court also stated that the "credentials requirement of section 3-5-23(b) will otherwise remain in force." Id.

Subsequently, the credentials form was revised in accordance with the decision in McClure.

431, 438 (upholding Georgia ballot access requirement that independent candidates obtain signatures of five percent of total registered voters).

Finally, plaintiff argues that the signatures required for independent candidates cannot be precisely determined and that requiring independent candidates to have petitions while party candidates do not have to meet this requirement is unreasonable. West Virginia Code § 3-5-23 provides that the signatures required on the nominating petition "shall be equal to not less than two percent of the entire vote cast at the preceding general election for the office in the state, district, county or other political division for which the nomination is to be made, but in no event shall be less than twenty-five."

Contrary to plaintiff's argument, defendant's counsel informed this Court at the preliminary injunction hearing that elections are certified in the State of West Virginia and that the certified votes can be found on the State's website, the West Virginia Blue Book, and in the West Virginia Secretary of State's Office.  Thus, this Court finds plaintiff's argument to be without merit.

In addition, this Court finds that the two percent requirement for non-party candidates is not unreasonable.  In fact, in Jenness, the Supreme Court upheld a scheme similar to that of West Virginia for regulating the number of votes on the ballot.  In Jenness, the State of Georgia allowed the candidate for minor parties to win a

13

place on the ballot by filing a nomination petition signed by five

percent of persons eligible to vote in the last election.    The

Supreme Court stated in <u>Jenness</u>:

> There is surely an important state interest in requiring
> some preliminary showing of a significant modicum of
> support before printing the name of a political
> organization's candidate on the ballot -- the interest,
> if no other, in avoiding confusion, deception, and even
> frustration of the democratic process at the general
> election.

<u>Id.</u> at 442.

Notably, in <u>Socialist Workers Party v. Heckler</u>, 890 F.2d 1303

(4th Cir. 1989), <u>cert. denied</u>, 495 U.S. 932 (1990), the Fourth

Circuit Court of Appeals stated:

> Although Georgia placed fewer restrictions on the right
> of an individual to sign a nominating petition -- for
> instance, a person who previously signed a petition could
> vote in the primary -- West Virginia's restrictions are
> balanced by the one percent requirement,[8] as opposed to
> Georgia's five percent, and by the fact that there is no
> restriction in West Virginia on the length of time spent
> gathering signatures while Georgia required this to be
> done no more than 180 days before the petitions were
> filed.  <u>To reiterate we agree that, on balance, West
> Virginia's scheme is no more burdensome, and in some
> important respects is less burdensome than other states
> which have found them constitutional.</u>

<u>Id.</u> at 1306.

Accordingly, this Court finds that plaintiff will not likely

succeed on the merits of his claim that W. Va. Code § 3-5-23 is

---

[8] This Court notes that W. Va. Code § 3-5-23(c) now contains
a two percent requirement.

14

unconstitutional and that, therefore, its enforcement should be enjoined.

D.   Public Interest

The final Blackwelder factor that a plaintiff must show as a prerequisite for injunctive relief is the "public interest." This Court finds that in the present case that the public interest will not be served by enjoining W. Va. Code § 3-5-23. Rather, the state has a public interest in providing statutory requests for the proper filing of candidacy forms and for the compliance with that state's election laws.

V.   Conclusion

For the reasons stated above, plaintiff's motion for expedited preliminary injunction is DENIED.

The plaintiff, who appears pro se, is advised that he may, pursuant to 28 U.S.C. § 1292(a)(1) file, within thirty days from the date of the entry of this order, a notice of appeal of the order to the United States Court of Appeals for the Fourth Circuit.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:   August 9, 2004

FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE

15